(No. 5238— 

MARY SPEAR, Claimant, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed January 10, 1967.*

DUNN and HAYES, Attorneys for Claimant.

WILLIAM G. CLARK, Attorney General; GERALD S. GROBMAN, Assistant Attorney General, for Respondent.

PEZMAN, J.

Claimant seeks to recover the sum of $325.50 for the loss of her 1959 Studebaker automobile, which was damaged beyond repair on June 2, 1965, while being driven by one Charles Brooks, a ward of the Illinois Youth Commission, who with one Paul Morris, likewise a ward of the Illinois Youth Commission, stole the automobile while it was parked on the grounds of the Morris Country Club, at Morris, Illinois. Claimant seeks the sum of $290.00 for the automobile; $7.50 for a pair of men's rubber overshoes, which was present in the car at the time of the accident; and, the sum of $15.00 for towing charges to remove the automobile from the scene of the accident. Claimant further alleges that said automobile was equipped shortly before with snow tires of a value of $48.00, and that she received the sum of $35.00 as salvage for said automobile.

The facts appear to be undisputed. Claimant, on the morning of June 2, 1965, drove her 1959 Studebaker to an implement shed, which was located on the grounds of the Morris Country Club. She and her husband, William Spear, operated the Pro Shop at the Morris Country Club. The automobile was left near the implement shed

for the use of the said husband and the greens keeper in moving golf carts, which were used on the golf course, from the implement shed to the Pro Shop, which was located about one-half mile from the implement shed. Claimant stated that keys were left in the car so that the grounds keeper could move the car, if it became necessary to move other equipment out of the shed in the maintenance of the golf course. From the record it appears that the Morris Country Club is a corporation organized under the laws of the State of Illinois, and, as such, is the legal owner, and holds title to the real estate upon which the golf course and implement shed were located.

On June 2, 1965, Charles Brooks and Paul Morris were wards in the custody of the Illinois Youth Commission in its camp at Channahon, Illinois, and were part of the work detail from the Boys' Camp in Gebhard Woods State Park, near Morris, Illinois. The Departmental Report made by the Camp Director to the Superintendent of Forestry Camps of the Illinois Youth Commission comprises one of the most important elements of evidence in this case, and is, therefore, set forth in detail as follows:

"The above three youths ran from the Gebhard Woods State Park work detail at approximately 10:25 A.M., June 2, 1965. The detail was being supervised by Mr. Arthur Ryder, who noticed the boys' runaway immediately. Mr. Ryder went to a neighbor's house near the park and called me, and I notified the sheriff's office and the State police.

"Ronald Williams, age 16, was apprehended at 10:45 A.M. when two deputies from the sheriff's office happened to be cruising in the area and noticed the three boys together. They apprehended Ronald Williams at this time, but the other two boys were able to elude them across a field and in some heavy underbrush and woods. When the boys departed from the detail, each had a hand sickle in his possession. The three boys were part of an eight boy work detail that started working at 8:00 A.M.

"Paul Morris and Charles Brooks made their way to the Morris

Country Club located on Route No. 6 west of Morris, Illinois, and stole a 1959 Studebaker Lark automobile that had the keys in the ignition. The automobile belonged to Mrs. Leslie Spears. The boys took the automobile, and went to Route No. 80 near the City of Minooka, Illinois, with Charles Brooks driving. The boy lost control of the vehicle, and the car left the right hand side of the road, turned over three times, and was completely destroyed. At this point the Illinois State Police apprehended these boys, but at the time of the wreck they were not being pursued. The driver just lost control.

"Paul Morris suffered a cut arm and some bruises on his body, and Charles Brooks complained of a sore back, but apparently none of these injuries were of a serious nature. The sheriff's office still has Paul Morris and Charles Brooks in custody, and any medical attention that might be needed is being taken care of there.

"Ronald Williams was returned to the Reception Center on June 2. He had not been a special disciplinary problem while at camp. He had wanted to be transferred to Kankakee Camp where he had been previously, but neither you nor I could see any special reason for this being done.

"Charles Brooks and Paul Morris are both 17 years of age. The State's Attorney is filing an information petition against them for auto theft, and they are to have a court hearing on Friday, June 4, 1965, at the Grundy County Court House at Morris. Charles Brooks had been in camp just about a month, since May 13, 1965, and his only problems were continuous smoking, and not wanting to work on detail. Charles had spoken of running away on several occasions. Paul Morris had been in camp for three months, and, except for two occasions when he was very defiant to the staff, he had not been in any other difficulty."

This claim is predicated upon Chap. 23, Sec. 4041, Ill. Rev. Stats., which is as follows:

"Section 1. Whenever a claim is filed with the Department of Mental Health, or the Department of Children and Family Services, or the Department of Public Safety, or the Youth Commission for damages resulting from property being stolen, heretofore or hereafter caused by an inmate who has escaped from a charitable, penal, reformatory or other institution over which the State of Illinois has control while he was at liberty after his escape, the Department of Mental Health, or the Department of Children and Family Services, or the Department of Public Safety, or the Youth Commission, as the case may be, shall conduct an investigation to determine the cause, nature and extent of the damages inflicted, and, if it be found after investigation that the damage was caused by one who had been an inmate of such institution and had escaped, the said Department or Commis-

sion may recommend to the Court of Claims that an award be made to the injured party, and the Court of Claims shall have the power to hear and determine such claims."

This Court in *Dixon Fruit Company, a Corporation, et al.,* vs. *State of Illinois,* 22 C.C.R. 271, held that a favorable recommendation by the department or commission concerned is not a condition precedent to recovery under the statute. In the cause at hand no recommendation was made by the Illinois Youth Commission. Claimant alleges that respondent failed to maintain proper surveillance and supervision over its wards, Charles Brooks and Paul Morris, and more particularly over Charles Brooks, who was the driver of the stolen automobile, and who is mentioned in the Departmental Report as having spoken of running away on several occasions. Respondent contends that claimant must prove by a preponderance of the evidence that the State was negligent in allowing the inmates to escape, and further urges that claimant was guilty of contributory negligence in leaving the keys in the ignition of her automobile when she parked it on the property of the Morris Country Club.

These matters have been passed upon by the Court of Claims in previous decisions, and it is the acknowledged position of this Court that every escape case involving the State of Illinois, which results in damage or injury to a third party, must rest upon its own peculiar set of facts and circumstances. We hasten to affirm the position of the Court as set forth in *American States Insurance Company and Union Indemnity Association* vs. *State of Illinois,* 23 C.C.R. 47. In that case the Court stated on page 55:

"It goes without saying that rehabilitation is the fundamental aim of the Youth Commission program. Decisions as to the placement and progress of these youths must be made by utilizing the best judg-

ment of professional persons trained in administering this program. It is not an exact science, and cannot be administered by a slide rule. It is certain that instances will occur wherein the results of attempted rehabilitation are disappointing. Such instances by no means indicate faulty administration of the program. The duty of the State personnel in exercising the discretion required is not that of an insurer that each boy assigned to the encampment will perform satisfactorily, any more than that the Parole Board should be held to guarantee that a parolee will commit no further crimes. The only duty, which is required, is one of reasonable exercise of discretion."

In the *American States Insurance Company* case this Court found no negligence on the part of respondent. The finding was based upon evidence and testimony produced on the part of respondent. In the cause at hand, respondent filed a Departmental Report, but called no witnesses. Other than the facts set forth in the Departmental Report, the evidence in this case consists of claimant's exhibits, her testimony by deposition, and the deposition of her witness with regard to the matter of damages to the automobile. While reaffirming the position of this Court as taken in the *American States Insurance Company* case, we find in the case at hand that respondent had advanced warning that its ward, Charles Brooks, might run away, and could have, therefore, anticipated his subsequent action on June 2, 1965, when he escaped from the work detail of the Youth Commission, and stole the automobile of claimant. This warning can be found in the Departmental Report where it states: "Charles had spoken of running away on several occasions." Without any other evidence to consider on the part of respondent, and having to rely upon respondent's Departmental Report, we distinguish the two cases on the basis of fact, and find negligence on the part of respondent.

We must now consider whether claimant was guilty of contributory negligence in leaving her car at the im-

plement shed on the Morris Country Club grounds with the keys in the ignition. It seems reasonable that an automobile owner would anticipate the danger involved in taking such action, and it is common knowledge that an unattended, unlocked car with the keys in the ignition is not safe. This question has been considered by the Court of Claims and Illinois Courts of Review on several occasions. *United States Fidelity and Guaranty Company, A Corporation,* vs. *State of Illinois,* 23 C.C.R. 188; *Stanko* vs. *Żlien,* 33 Ill. App. 2d 364; and *Childers* vs. *Franklin,* 46 Ill. App. 2d 344. In the *United States Fidelity and Guaranty Company* case, respondent relied upon Sec. 189 of Chap. 95½, Ill. Rev. Stats.:

"No person driving or in charge of a motor vehicle shall permit it to stand unattended without first stopping the engine, locking the ignition, and removing the key."

In that case the automobile of claimant, John Kavanaugh, was parked on private property in the driveway of the Kavanaugh home with the keys lying on the seat at the time the automobile was stolen. On page 195 of 23 C.C.R. the Court held as follows:

"We conclude that the action of the inmate in entering the automobile in the night time, finding the ignition locked, finding the keys on the seat, stealing the car from the front of the residence, and driving it into a post in another part of town, was not reasonably to be foreseen by John Kavanaugh in the exercise of ordinary care for the protection of his property, and constituted the proximate cause of the damage to the Kavanaugh automobile. Consequently, even assuming a violation of the statute, we do not believe that it constitutes contributory negligence, which proximately contributed to the damage in question, so as to bar recovery by this claimant.

"We believe from the evidence in this case that claimant's insured, John Kavanaugh, was in the exercise of ordinary care for the safety of his automobile, that respondent was negligent in exercising custody over the escaped inmate, and, as a proximate result thereof, the vehicle was stolen and damaged."

In the case of *Childers* vs. *Franklin* cited above, statutory

prohibition against motor vehicles standing unattended with the keys in the ignition lock was not applicable to a situation in which the owner left his automobile on a school parking lot unlocked and with the keys in the ignition.

This Court finds the claimant to be free of contributory negligence, and grants to her an award of $325.50.